IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINCOLN DAVE LEVYS, JR., | ) |
| Plaintiff, | ) |
| | ) Civ. No. 16-1624 |
| v. | ) District Judge Nora Barry Fischer |
| | ) |
| JOHN V. SHAMLIN, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

On July 24, 2017, John V. Shamlin, William D. Mathias, Timothy Morse, and the City of Pittsburgh Police Department (*collectively* "Defendants") filed a Motion to Dismiss (Docket No. 54) the Third Amended Complaint of *pro se* Plaintiff Lincoln Dave Levys, Jr. (Docket Nos. 35, 44).[1] Plaintiff currently advances claims pursuant to 42 U.S.C. § 1983 for alleged deprivation of his due process and equal protection rights, in violation of the Fourth, Fifth, Sixth, and Eighth Amendments to the Constitution of the United States. In support of dismissal of these claims, Defendants attached numerous exhibits to their Motion. (Docket Nos. 54-1 – 5). Plaintiff similarly attached matter outside the pleadings to his Response. (Docket No. 59-1 – 3). On September 29, 2017, the Court converted the Motion to Dismiss *sua sponte* to one for Summary Judgment, and granted leave for the parties to submit additional briefing and exhibits. (Docket No. 65). The time

---

[1] Plaintiff did not actually label these documents as being his Third Amended Complaint. Given Plaintiff's status as a *pro se* litigant, however, the Court entered Orders on May 23, 2017 and June 7, 2017 construing them as such. *See* (Docket No. 43) ("Plaintiff's Response in Opposition [at Docket No. 35] … shall be treated as the Third Amended Complaint."); (Docket No. 45) ("[T]o the extent Plaintiff seeks to supplement his Third Amended Complaint, his 'Brief and Response to Motion for Clarification' [at Docket No. 44] shall be accepted and incorporated therein.").

for filing supplemental material having passed, the Court has taken the Motion, briefs, and exhibits of record into consideration. For the reasons that follow, Defendants' Motion shall be GRANTED.

## II. FACTUAL & PROCEDURAL BACKGROUND

At approximately 12:30 a.m. on September 11, 2014, 911 dispatch alerted officers from the City of Pittsburgh Police to a report of shots fired in the 1400 block of Amanda Avenue in the Pittsburgh neighborhood of Carrick. (Docket Nos. 35 at 1; 54-1 at 6, 22; 54-2 at 1). Defendants were on duty at the time and responded to the call. Of the Defendants, Officer Shamlin was the first to proceed to the scene. (Docket Nos. 35 at 1; 54-1 at 6 – 7). While en route, and about ten minutes after the first call, Officer Shamlin was alerted to a separate call regarding suspicious activity in the backyard of a home at 1215 Amanda Street, which was about two blocks away from the area of the reported shooting. (Docket Nos. 54-1 at 6 – 7; 54-3 at 1 – 2). Officer Shamlin encountered Plaintiff walking near 1215 Amanda Street. (Docket Nos. 35 at 1; 54-1 at 2). Officer Shamlin remained in his patrol car, rolled down his window, and inquired about Plaintiff's whereabouts just prior to his arrival. (Docket Nos. 35 at 1; 54-1 at 9, 24). Plaintiff informed Officer Shamlin that he had just left his residence, confirmed that his residence was the house at 1215 Amanda Street, and then continued to walk. (*Id.*).

At that time, Officer Shamlin signaled two officers in another police vehicle traveling in the opposite direction to stop Plaintiff. (Docket Nos. 35 at 2; 54-1 at 9). With their hands on their firearms, the two officers stepped out of their vehicle, stopped Plaintiff, and began to search his person. (Docket No. 35 at 2). Plaintiff was informed that the police had received reports of a prowler in a nearby yard following the earlier gunfire. (*Id.*). Defendant Mathias then arrived, and explained that a third call was received by the police indicating that Plaintiff was the "right person" earlier identified as the prowler. (*Id.*).

The 911 call records show that there were multiple reports from callers that two males were involved in the shooting and that an individual in a yard near Plaintiff's house was discarding clothing. *See* (Docket Nos. 54-2, 54-3). Accordingly, Officer Shamlin entered Plaintiff's property with Officer Morse and searched in the backyard for any other individuals who may potentially be hiding there, as well as for any evidence which may have been discarded. (Docket Nos. 35 at 2; 54-1 at 11, 35). Officer Shamlin did not find any other individuals in the yard, but he did see that two marijuana plants were growing in the yard. (Docket No. 54-1 at 11). Officers Shamlin, Mathias, and Morse then went to Plaintiff's residence and spoke with his fiancé. (Docket Nos. 35 at 2; 54-1 at 13, 35). The officers entered the home, finding proof of Plaintiff's residence at the address, but finding no other evidence of unlawful activity. (Docket No. 54-1 at 14).

Officer Shamlin filed a criminal complaint on September 11, 2014, charging Plaintiff with the following crimes:

> The actor, not being registered under the Controlled Substance, Drug, Device and Cosmetic Act, Act [sic] of April 14, 1972, nor being a practitioner registered or licensed by the appropriate State Board, manufactured or possessed with intent to manufacture a controlled substance, namely MARIJUANA, in violation of 35 P.S. § 780-113(a)(30).
>
> The actor knowingly or intentionally possessed a controlled or counterfeit substance, namely, MARIJUANA [sic] the said actor not then and there being registered under the Controlled Substance, Drug, Device and Cosmetic Act, Act [sic] of April 14, 1972, or a practitioner registered or licensed by the appropriate State Board, in violation of 35 P.S. § 780-113(a)(16).

(Docket No. 54-4). On January 30, 2015, a suppression hearing was held before Judge Thomas Flaherty of the Court of Common Pleas of Allegheny County. (Docket No. 54-1). Following the hearing, which included testimony from both Officer Shamlin and Officer Mathias, Judge Flaherty

3

granted the motion to suppress. The charges were nolle prossed on April 28, 2015. (Allegheny County Court of Common Pleas Docket No. CP-02-CR-0012754-2014).

Plaintiff filed a Complaint, *pro se*, in this Court on October 21, 2016.[2] (Docket No. 1-1). As noted, Plaintiff filed two documents on April 14, 2017 and June 6, 2017, (Docket Nos. 35, 44), which the Court construes as his Third Amended Complaint. *See* note 1, *supra*. Defendants' Motion to Dismiss has been fully briefed and converted[3] to a Motion for Summary Judgment, and is now ripe for disposition. The Court's analysis follows.

**III.    STANDARD OF REVIEW**

Summary Judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

---

[2]    Since the filing of the original Complaint, Plaintiff has been incarcerated due to an unrelated criminal matter. (Docket No. 54-5). Pursuant to the federal prisoner mailbox rule, the Court deems the date that Plaintiff signed the Complaint, rather than the date it was received and docketed, as the operative filing date. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 600 n. 2 (3d Cir. 2015).

[3]    When resolving a motion to dismiss, the Court may not "'go beyond the facts alleged in the Complaint and the documents on which the claims made therein are based.'" *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997)). However, if the Court does consider matters outside the pleadings, a motion to dismiss must be treated as one for summary judgment. *Id.* (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Such a conversion is typically triggered by a challenge to the sufficiency of a claim, in conjunction with the presentation of supplemental material outside the pleadings. *Id.* Once converted, the parties must be notified and provided with a "reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the Court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F.App'x 139, 141 n. 4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F. 3d 195, 200 (3d Cir. 1995)).

Additionally, where the non-moving party is proceeding *pro se*, the Court must be flexible in its consideration of the pleadings, as well as in the application of the technical rules of litigation. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 – 45 (3d Cir. 2013). The court is also mindful that, "'an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate record evidence on his behalf.'" *Smith v. Mensinger*, 293 F.3d 641, 649 n. 4 (3d Cir. 2002) (quoting *Brooks v. Kyler*, 204 F.3d 102, 108 n. 7 (3d Cir. 2000)). Nonetheless, a well-supported motion for summary judgment will not be defeated where the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate the existence of a genuine issue. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

## IV. DISCUSSION

The Third Amended Complaint asserts that Defendants violated several of Plaintiff's constitutional rights, including his due process and equal protection rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.[4] But, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation and internal quotation marks omitted). Here, the Fourth Amendment is the explicit textual source of constitutional protection against unreasonable searches and seizures by the government and its agents. Accordingly, Plaintiff's due process claims, which he asserts under the Fifth, Sixth, and Fourteenth Amendments,[5] are dismissed as duplicative to his Fourth Amendment claims. *See Bradley v. Kuntz*, 655 Fed. Appx' 56, 59 (3d Cir. 2016). Plaintiff's attempt to assert an equal protection claim under the Eighth Amendment fares no better. The Eighth Amendment does not apply because Plaintiff was not a convicted prisoner serving a sentence of incarceration during the relevant time period, *Natale v. Camden Cty. Corr. Fac.*, 318 F.3d 575, 581 (3d Cir. 2003), and aside from his conclusory assertion that his equal protection rights were violated, Plaintiff does not allege facts of intentional and arbitrary discrimination by any of the Defendants to support a cognizable equal protection claim. *See*

---

[4] These claims are asserted under 42 U.S.C. § 1983. Section 1983 serves as a means of vindicating violations of federal constitutional and statutory rights. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). In order to properly state a valid § 1983 claim, a plaintiff must demonstrate that a person acting under color of law violated enumerated constitutional or statutory rights. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000).

[5] The Fifth Amendment's Due Process Clause only applies to actions of the federal government, whereas the Fourteenth Amendment's Due Process Clause applies to acts under color of state law. *See B & G Constr. Co., Inc. v. Director, Office of Worker's Comp. Programs*, 662 F.3d 233, 246 & n. 14 (3d Cir. 2011).

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Therefore, Plaintiff's allegations in this case against Defendants are properly analyzed under the Fourth Amendment.[6]

In this regard, Plaintiff asserts that Defendants violated the Fourth Amendment by conducting an investigatory stop without reasonable suspicion, searching his yard without consent or probable cause, searching his home without consent or probable cause, and wrongly placing him under arrest, as a result. (Docket No. 35 at 3). In response, Defendants argue that there was reasonable suspicion to stop Plaintiff based upon a tip received by an individual calling emergency dispatch, exigent circumstances justified entry onto Plaintiff's property where marijuana plants were in plain view, and Plaintiff's fiancé provided the officers with consent to search his home. (Docket Nos. 55 at 4 – 10; 62 at 1 – 5). Defendants also argue that the officers are entitled to qualified immunity under the circumstances of the case. (*Id.*). Further, to the extent that claims are made against the City of Pittsburgh or its Police Department, Defendants argue that such claims fail to satisfy the elements for same as established in *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). (*Id.*). For the reasons that follow, the Court agrees with Defendants that the officers are entitled to qualified immunity and that Plaintiff's claims against the City are deficient under *Monell*.

---

[6] Plaintiff also advances claims pursuant to 18 U.S.C. §§ 241 and 242 for an alleged conspiracy to deprive him of his constitutional rights. (Docket No. 35 at 3). The Court notes that, as such claims are based on criminal statutes, Plaintiff lacks standing to argue violations of §§ 241 and 242. *See Spell v. Allegheny Cnty. Admin.*, 2015 WL 1321695, at * 4 (W.D. Pa. Mar. 24, 2015) (Ambrose, J.) ("Plaintiff's claims arising under 18 U.S.C. § 241 (Conspiracy Against Rights); § 242 (Deprivation of Rights Under Color of Law); and § 245 (Federally Protected Activities), likewise must be dismissed with prejudice. These are federal criminal statutes and, as such, do not provide for a private civil cause of action. Thus, a violation of these statutes cannot form the basis of a private civil suit."). Accordingly, the Court shall grant judgment as a matter of law in favor of Defendants with respect to any claims raised under these statutes.

### A. Qualified Immunity

At the outset, the Court acknowledges that Judge Flaherty suppressed the evidence of the marijuana plants during Plaintiff's criminal proceedings in state court. Although Defendants contend that Judge Flaherty's decision was erroneous, *see* (Docket No. 55 at 4 n. 2), the Court does not have any way of assessing his reasoning, as Judge Flaherty took the matter under advisement during the hearing, (Docket No. 54-1 at 72), and the Court has not been provided with a copy of his written decision, to the extent one exists.[7] In any event, the Court has little trouble finding that regardless of whether Judge Flaherty's decision granting Plaintiff's motion to suppress was right or wrong, the individual officer Defendants are entitled to qualified immunity in this case. *See Burke v. Sullivan*, 677 F.3d 367, 372 (8th Cir. 2012) ("Because the instant matter concerns a claim for qualified immunity, not a motion to suppress evidence, we need not reach the issue of whether the officers violated the dictates of the Fourth Amendment.").

Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from liability for damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a]

---

[7] The Court may take judicial notice of Plaintiff's state court criminal docket sheet. *Buxton v. Dougherty*, 686 F. App'x 125, 127 (3d Cir. 2017); *see also Dean v. Capozza*, 2013 WL 1787804, *1 (W.D. Pa. 2013), R&R adopted by 2013 WL 1787802 (W.D. Pa. 2013) ("Pennsylvania's Unified Judicial System provides online access to the docket sheets for criminal cases, and this Court may take judicial notice of those public dockets."). The docket sheet reveals that on February 3, 2015, Judge Flaherty ordered that the court reporter prepare the transcript from the January 30, 2015 suppression hearing. *See* CP-02-CR-0012754-2014 (https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-02-CR-0012754-2014). The next docket entry is from approximately two months later, on April 2, 2015, wherein the Commonwealth sought reconsideration of the order granting the motion to suppress. However, the underlying order granting the motion to suppress is not listed on the docket sheet. On April 25, 2015, Judge Flaherty entered an order denying the Commonwealth's motion for reconsideration. The Court has not been provided a copy of either order and it is unclear from the docket sheet what rationale, if any, was given in the orders.

right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates the right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To this end, the doctrine of qualified immunity operates to give officers "breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* at 743. Qualified immunity is particularly relevant in the context of the Fourth Amendment, where it is often "difficult for an officer to know whether a search or seizure will be deemed reasonable given the precise situation encountered." *Ziglar v. Abasi*, -- U.S. --, 137 S. Ct. 1843, 1866 (2017); *see also George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) ("Determining whether a right alleged to have been violated is so clearly established that any reasonable officer would have known of it 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

"When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, --- U.S. ---, 135 S. Ct. 2042, 2044 (2015). (citation and internal alternation and quotation marks omitted).

> To determine whether a given officer falls into either of those two categories, a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted. If so, then the defendant officer must have been either incompetent or else a knowing violator of the law, and thus not entitled to qualified immunity. If not, however – i.e., if a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability.

*Ziglar*, 137 S. Ct. at 1867 (citation and quotation marks omitted). Because qualified immunity "is an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original), the Supreme Court has "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson v.*

*Callahan*, 555 U.S. 223, 232 (2009). With this standard in mind, the Court turns to Plaintiff's Fourth Amendment claims and the circumstances of this case.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend IV. The Fourth Amendment does not, however, prevent law enforcement authorities from conducting a brief stop, known as a *Terry* stop, when there is "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. Cal.*, --- U.S. ---, 134 S.Ct. 1683, 1687 (2014) (quoting *United States v. Cortez*, 499 U.S. 411, 417 – 18 (1981)). Such a "reasonable suspicion" of criminal activity "'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Id.* (quoting *Ala. v. White*, 496 U.S. 325, 330 (1990)). While a mere hunch is not sufficient to establish reasonable suspicion, "the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Id.* (quoting *United States v. Sokolaw*, 490 U.S. 1, 7 (1989)); *see also Cortez*, 449 U.S. at 418 ("The process does not deal with hard certainties, but with probabilities.").

In analyzing this issue, courts "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* Moreover, "[w]hen officers are told to investigate a situation by a police dispatcher, as was the case here, the court must look beyond the specific facts known to the officers on the scene to the facts known to the dispatcher." *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008). "In other words, the knowledge of the dispatcher is imputed to the officer in the field when determining

the reasonableness of the *Terry* stop." *Id.* Whether the information relied upon by the police was sufficient to establish reasonable suspicion depends on the "veracity, reliability, and basis of knowledge" of the informant. *United States v. Johnson*, 592 F.3d 442, 449 (3d Cir. 2010).[8] "[A] tip need not bear all of the indicia – or even any particular indicium – to supply reasonable suspicion," since "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Torres*, 534 F.3d at 213.

In addition, given the realty that the officers' decisions are "often made under exigent circumstances requiring quick, decisive reactions," courts must be mindful that a judicial determination "[c]alculating whether an officer has reasonable suspicion to warrant a stop and search is often an imprecise judgment." *United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002). The typical examples of exigent circumstances include hot pursuit of a fleeing suspect, danger to the life or well-being of others, and the potential for destruction of evidence. *United States v. Mallory*, 765 F.3d 373, 384 (3d Cir. 2014) (citing *United States v. Coles*, 437 F.3d 361, 366 (3d Cir. 2006)). The common thread for all allegedly exigent circumstances "is imminence – 'the existence of a true emergency.'" *Id.* (quoting *United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011)). In such circumstances, "the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant." *Coles*, 437 F.3d at 366 (citing *Warden v. Hayden*, 387 U.S. 294, 298 – 99 1967)). Even so, a determination of exigence is an objective

---

[8] There are a number of factors that courts utilize when assessing the reliability of an informant's tip, including whether (1) the information was provided to the police in a face-to-face interaction, allowing an officer to assess directly the informant's credibility; (2) the informant can be held responsible if her allegations are untrue; (3) the information would not be available to an ordinary observer; (4) the informant has recently witnessed the criminal activity at issue; and (5) the witness's information accurately predicts future activity. *Johnson*, 592 F.3d at 449. No single factor, however, is dispositive or even necessary to render an informant's tip reliable. *Id.*

inquiry, and the burden of demonstrating same is heavy. *Mallory*, 765 F.3d at 383 – 84 (citing *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006); *Welsh v. Wis.*, 466 U.S. 740, 749 – 50 (1984)).

While a law enforcement officer's leave to gather information is "sharply circumscribed when he…enters the Fourth Amendment's protected areas," *Jardines*, 569 U.S. at 7 (quoting *Cal. v. Ciraolo*, 476 U.S. 207, 213 (1986)), the "Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Mallory*, 765 F.3d at 384 (citation and quotation marks omitted). Further, under the plain-view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minn. v. Dickerson*, 508 U.S. 366, 375 (1993).

In this case, several reports were made to the 911 dispatcher between 12:30 a.m. and 1:00 a.m. that (1) two individuals were involved in a shooting on the 1400 block of Amanda Street and had fled by foot; and, (2) that two blocks away, there was a prowler in the yard near Plaintiff's residence at 1215 Amanda and that the prowler was discarding clothing in the yard. This information that was conveyed to the dispatcher is imputed to Defendants for purposes of this analysis. *See Torres,* 534 F.3d at 210.[9] When Officer Shamlin was responding to the calls and approaching Plaintiff's residence, Plaintiff was walking in the vicinity and confirmed that he had just come from 1215 Amanda Street. Under these circumstances, the Court cannot conclude that every reasonable officer in Defendants' shoes would have understood that detaining Plaintiff and going into his yard to search for another individual was a violation of Plaintiff's constitutional

---

[9] Given same, Plaintiff's assertion that there were conflicting reports about whether the shooters were white or black men does not mean that the officers acted unreasonably in detaining him. *See Torres*, 534 F.3d at 212 ("We do not fault the officers' choice to forgo extensive credibility checking in order to quickly respond. The business of policemen and firemen is to act, not speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process.") (quoting *Untied States v. Sanchez*, 519 F.3d 1208, 1211 n. 1 (10th Cir. 2008)).

rights. *See al-Kidd*, 563 U.S. at 741. In this Court's estimation, Defendants' actions here were neither plainly incompetent nor a knowing violation of the law. *See Taylor*, 135 S. Ct. at 2044.[10] Accordingly, it follows that when Defendants saw the marijuana plants in Plaintiff's yard when searching it, the Defendants' conduct of seizing the marijuana and arresting Plaintiff was justified for purposes of qualified immunity, notwithstanding that Judge Flaherty ultimately granted Plaintiff's motion to suppress in his subsequent state court criminal proceeding. Indeed, Plaintiff does not deny that the plants in his yard were in fact marijuana or that the incriminating character of the marijuana plant was immediately apparent to Defendants. *See Dickerson*, 508 U.S. at 375. *See also Ariz. v. Hicks*, 480 U.S. 321, 326 (1987) (in the course of an exigent search, officers may seize contraband items in plain view without a warrant). Thus, Plaintiff's Fourth Amendment claims for false arrest and malicious prosecution based on the criminal charges against him for the marijuana plants must also fail. *See Johnson v. Knorr*, 477 F.3d 75, 84-85 (3d Cir. 2007); *Woodyard v. Cty. of Essex*, 514 Fed. App'x 177, 183 (3d Cir. 2013) ("The trial court's later suppression of certain witness' out-of-court identifications is irrelevant to a determination of whether probable cause supported the arrest warrant and the indictment.").

Finally, Plaintiff contends that the officers coerced his fiancé into providing consent to search his house. *See United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011) (for consent to be valid it must be provided voluntarily and by an individual with authority). However, this assertion

---

[10] The Court notes that Plaintiff also claims that the manner in which he was stopped – with the officers' hands on their firearms and the use of handcuffs – was inappropriate. However, because the officers were responding to reports of shots fired and of a prowler discarding clothes nearby, they are, at the very least, entitled to qualified immunity for this conduct. *See Johnson*, 592 F.3d at 448 (finding that the officers "took only 'such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop'" when they surrounded the vehicle with their guns drawn and shouted and handcuffed the occupants). *See also Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) ("There is no bright-line rule establishing that an officer's display of his service weapon automatically elevates an investigatory stop into an arrest.").

13

is wholly conclusory, speculative, and unsupported by the record. During the suppression hearing before Judge Flaherty, Officer Shamlin and Officer Mathias testified that the fiancé voluntarily consented to a search of the house. (Docket No. 54-1 at 27, 32 – 33). Plaintiff has provided no evidence in the form of affidavits, depositions, admissions, and/or interrogatories to rebut Defendants' testimony. Thus, even when viewed in the light most favorable to Plaintiff, there is no genuine dispute of material fact as to the voluntariness of consent. *Guidotti*, 716 F.3d at 773.

For all of these reasons, the individual Defendants are entitled to qualified immunity on all of the claims in the Third Amended Complaint.

### B. *Monell* Claim against the City of Pittsburgh

Plaintiff's claims against the City of Pittsburgh are analyzed under the framework set forth in the Supreme Court's decision in *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), which held that municipalities constitute "persons" against whom a claim may be raised under § 1983.[11] *See Jackson v. City of Erie Police Dep't*, 570 F.App'x 112, 114 n. 2 (3d Cir. 2014). However, a plaintiff cannot premise liability upon a theory of *respondeat superior* or vicarious liability. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). "A 'person' is not the 'moving force behind the constitutional violation' of a subordinate, unless that 'person' – whether a natural one or a municipality – has exhibited deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (quoting

---

[11] The City of Pittsburgh Police Department, Zone 3, presently identified as one of the Defendants in the instant case, is not a proper party – it is not an entity separate from the municipality of which it is a part. *See Sorrells v. Phila. Police Dep't*, 652 F.App'x 81, 83 (3d Cir. 2016) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997)) (courts "treat the municipality and its police department as a single entity for purposes of section 1983 liability"). However, the Court is mindful of Plaintiff's *pro se* status, and the need to construe pleadings liberally and draw all reasonable inferences in his favor. *Id.* at 82. Accordingly, the Court will construe this claim as one asserted against the City of Pittsburgh. *See id.* at 83 (court construed claim as one against City of Philadelphia, as opposed to its police department, ultimately finding that it did not affect the court's final disposition).

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). As such, in order to demonstrate municipal liability for a constitutional violation under § 1983, a claimant must identify a municipal policy[12] or custom[13] that caused same. *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997)); *Williams v. Guard Bryant Fields*, 535 F.App'x 205, 210 – 11 (3d Cir. 2013).

Courts have identified three fact patterns whereby the acts of municipal personnel may be imputed to a policy or custom of a municipal entity, rendering the municipal entity liable under § 1983: (1) "where 'the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;'" (2) "where 'no rule has been announced as policy but federal law has been violated by an act of the policymaker itself;'" and (3) "where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bryan Cnty.*, 520 U.S. at 417 – 18). The inquiry does not end there; a claimant must then establish that the municipal policy or custom was the proximate cause of his or her injuries. *Kneipp*, 95 F.3d at 1213. A claimant "must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's policy or custom and the specific deprivation of constitutional rights at issue." *Id.* As long as the link is not

---

[12] "A policy is made 'when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy, or edict.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)).
[13] A custom "is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" *Natale*, 318 F.3d at 584 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)). A custom may be shown with evidence of "knowledge and acquiescence." *Mori v. Allegheny Cnty.*, 51 F.Supp.3d 558, 569 (W.D. Pa. 2014) (quoting *Fletcher v. O'Donnell*, 867 F.2d 791, 793 – 94 (3d Cir. 1989)).

too tenuous, the jury should be left to decide whether the municipal entity's policy or custom caused the alleged constitutional violation. *Id.*

At present, Plaintiff has failed to adduce evidence supporting a *Monell* claim vis-à-vis any of the aforementioned fact patterns. Instead, Plaintiff's response to Defendants' motion confirms that he is improperly seeking to hold the City liable under a theory of *respondeat superior*. *See* (Docket No. 59 at 6) (asserting that the City should be held liable for the conduct of its officers just like parents should be held liable for the conduct of their children); *Natale*, 318 F.3d at 584. As such, the Court will also enter summary judgment in favor of the City of Pittsburgh.

### V. CONCLUSION

Based upon the foregoing, the Court will grant Defendants' converted motion for summary judgment and will enter summary judgment in favor of Defendants and against Plaintiff. Appropriate Orders to follow.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   November 28, 2017

cc/ecf:   All counsel of record

Lincoln Dave Levys, Jr.
MV 2607
SCI Camp Hill
P.O. Box 200
Camp Hill, PA 17001
(via regular mail)